more clear, than that the sum stated in the invoice, is the minimum by which the agent is to be governed. As to the actual cost of the articles, it is almost impossible that the agent should know any thing about it, and very improbable that he should know even the real market price, at the place of shipment; and it is not to be supposed, that the principal could intend to refer his agent to an uncertain standard, when the order carries with it one which is certain. The goods may have cost the shipper much more than they are really worth at the time of shipping, or much less; and of course, the invoice price, more especially when it is referred to, as in this case it was, as fixing the sum for which the insurance was effected, fixes the only rational standard, by which the agent can and ought to be governed.

2. The plaintiff's bill did not authorize a breach of his orders, either in whole, or so far as to cover that bill. It was accepted before the defendant had notice of the shipment, upon the credit of the drawer and endorser; and even if it had been accepted afterwards, yet in either case, Bainbridge and Cartwright, if they accepted the consignment at all, it could only be upon the terms prescribed by the shipper. They might have refused to accept in the first instance, for want of advice or of funds; and might have done so even after the cargo was received, upon the ground, that they were restricted by the orders from selling, so as certainly to furnish funds for taking up the bill when it should become due. But it is entirely inadmissible for the defendant, to make their voluntary acceptance of the plaintiff's bill, an excuse for a breach of his orders.

3. There is no doubt, but that a principal may ratify the act of one who has acted in his behalf, as his agent, though without authority, or who has transcended his powers; and in this way give validity to the act, as if it had been strictly authorized in the first instance. This ratification may take place, not only directly, but by collateral acts; as if the principal, knowing all circumstances, sue for, accept, or even demand the payment of the purchase money, in this way indicating his willingness to affirm the sale. But in this case, the plaintiff did not demand the amount of sales, or even intimate that he would be satisfied to receive them. He drew for £430, which he had certainly a right to do, and informed Bainbridge and Cartwright, that he shall, in a subsequent letter, write more fully to them, and will then give directions as to the application of the balance in their hands; so that he reserves the right of deciding as to his future conduct, until the time when he should write again. It is possible, that the plaintiff wished to obtain further information as to the circumstances under which the sale of his cotton had taken place, and at the moment, might even have inclined to sub-

mit to what had been done. But his letter of the 6th of October, certainly did not commit him so far, as to prevent his subsequent refusal to sanction the sale which had been made. Accordingly, in his next letter, dated the 6th of November, he informs the defendant that he shall bring suit, to recover a compensation for the damages he had sustained by the breach of his orders. What those damages should be, you, gentlemen, must decide.

Verdict for upwards of 3000 dollars.

## Case No. 8,501.

In re LORD.

[5 Law Rep. 258.]

Circuit Court, D. Ohio. July 20, 1842.

BANKRUPTCY—DEBTS OF FIDUCIARY CHARACTER—AUCTIONEER—DEBT CONTRACTED BEFORE PASSAGE OF ACT.

This case having been certified up from the district court upon the following question, to wit: It appearing to the court that the debt specified in the schedule of the petitioner as owing, by the petitioner, to William A. Platt, is due from the petitioner in the character of auctioneer; and the court doubting whether said debt shall be considered as fiduciary in its character; and also doubting whether, in case it shall be so considered, it is a bar to a decree in bankruptcy, in behalf of the said [Horace] Lord,—the above points having been submitted to the circuit court, without argument, and having been considered by THE COURT, it was held, that the debt of an auctioneer is of a fiduciary character, and that, under the act, no relief can be given against such debt; and (2) that this debt having been contracted before the passage of the bankrupt act [of 1841 (5 Stat. 440)] that the application is not thereby deprived of the benefit of the act, as to other debts.

## Case No. 8,502.

In re LORD.

[3 N. B. R. 243 (Quarto, 58).] [1]

District Court, D. Maine. Dec. 7, 1868.

BANKRUPTCY—EXAMINATION OF BANKRUPT—RIGHT TO CONSULT COUNSEL BEFORE ANSWERING.

Whether the bankrupt should be allowed to consult counsel upon his examination, must be determined by the register, according to the circumstances of each particular case.

By the Register:

I, Charles Hamlin, one of the registers of said court in bankruptcy, do hereby certify, that in the course of the proceedings in said matter, before me, the following question arose pertinent to said proceedings, and was stated and agreed to by the counsel for the opposing parties, to wit: Mr.

---

[1] [Reprinted by permission.]

McCrillis. who appeared for the bankrupt, and Mr. Crosby, who appeared for Wood & Bishop, creditors of said bankrupt. The bankrupt on his examination, conducted by Mr. Crosby, attorney for creditors, was asked by me to answer the following written question proposed by Mr. Crosby, viz.: Have you ever made more than one deed to Hinkley & Egery, and if yea, what property and when? The bankrupt answered, that he desired to consult with his counsel, Messrs. Varney & McCrillis, who were present, before answering the question. Being of opinion that it was within my duty by law to determine whether, from the nature of the question and the facts sought to be discovered, the aid of counsel was necessary, and to aid me in deciding whether to refuse or admit the bankrupt to consult his counsel, I asked the following question of the bankrupt. viz.: Have you any recollection or knowledge of the subject-matter inquired into? and decided he should answer this last question without consulting his counsel; and the bankrupt answered, that he desired to consult with his counsel upon this question. I thereupon decided, the bankrupt should answer both of above questions without consulting with his counsel. And the said parties requested that the same should be certified to the judge for his opinion.

FOX, District Judge. Whether the bankrupt should be allowed to consult upon his examination, must be determined by the register according to the circumstances of each particular case. Counsel should not frame the answers; and as a general rule, I do not approve of the bankrupt's consulting with his counsel on his examination. In the present case the register was right in his decision.

## Case No. 8,503.

### In re LORD.

[5 N. B. R. 318.] [1]

District Court, D. New Jersey. July 25, 1871.

BANKRUPTCY—FRAUDULENT PREFERENCES—POWER OF ATTORNEY TO CONFESS JUDGMENTS.

Where a debtor gave to his creditors several bonds with warrants of attorney to confess judgments, for money lent in good faith, when neither the borrower or lender had reasonable cause to believe that the debtor was insolvent or intended any fraud upon the provisions of the bankrupt act [of 1867 (14 Stat. 517)], *held*, that judgments subsequently entered thereon, within four months of the date of filing petition in bankruptcy, and where both the debtor and the creditors had cause to believe the debtor to be insolvent, and intended a fraud upon the provisions of the act, were fraudulent preferences. The case of In re Wright [Case No. 18,071] considered and overruled.

[In the matter of F. C. Lord, a bankrupt.]

[1] [Reprinted by permission.]

P. L. Voorhees and E. T. Green, for assignee and general creditors.

F. Voorhees and J. Wilson, for judgment creditors.

NIXON, District Judge. This matter comes before the court upon a rule taken by the assignee of the bankrupt, upon certain judgment creditors to show cause why the judgments held by them against the property of the bankrupt should not be set aside as fraudulent preferences, and that the money arising from the sale of said property, by the sheriff, should be paid to such general creditors as had proved their claims according to the provisions of the bankrupt act. From the testimony taken in the case these facts seem to exist. A petition for adjudication in bankruptcy was filed against the bankrupt on the eleventh day of January, eighteen hundred and seventy, and such proceedings were had thereon that he was adjudged a bankrupt on the sixteenth day of February following. At the time of filing the petition there were eight judgments outstanding against the alleged bankrupt, entered in the circuit court of the county of Burlington, upon which executions had been issued, and levies made upon the property of the defendant, more particularly stated hereafter. Upon petitions and proofs filed, the court directed an injunction to issue, restraining the plaintiff and the sheriff of Burlington from all proceedings upon the said executions, and ordered the property levied upon to be sold clear of encumbrance, leaving the judgment creditors the right to show before the court, why the proceeds should be applied to the payment of their judgments in the order in which their liens attached.

We learn from the testimony taken in the case, that the bankrupt commenced business as a country merchant in the village of Marlton in the county of Burlington, about the first of March, eighteen hundred and sixty-four; that his capital did not exceed six hundred dollars; that on the fifth of February preceding, and before he purchased his stock of goods or opened his store, he borrowed of his brother, Wm. R. Lord, two thousand dollars, and gave to him, as evidence of his indebtedness, a bond for the payment of said sum in one year after the date, with interest payable half yearly, and at the same time executed to him a warrant of attorney, authorizing him to confess judgment thereon for the debt due upon his failure to pay the same; that on the fourth of March, eighteen hundred and sixty-four, he borrowed of Thomas Evans, Jr., six hundred dollars, and on the twenty-second of the same month, five hundred dollars more; and on the first of October following, one thousand dollars more; for which sums he executed to the said Evans, like bonds with warrants of attorney to confess judgments; that on the first of March, eighteen hundred